

# THE ATTORNEY GENERAL
## OF TEXAS

GROVER SELLERS    AUSTIN 11, TEXAS
XXXXXXXXXXXXXXXXXXXXX
ATTORNEY GENERAL

Honorable R. S. Wyche                Opinion No. 0-6243
County Auditor                       Re: Articles 1694, 1683, 1689
Gregg County                             and other related articles
Longview, Texas                          on county libraries.

Dear Mr. Wyche:

　　　　　Your opinion request of recent date has been received in this office and we quote from same as follows:

　　　　　"Facts: (1) There are three libraries in Gregg County operated by three incorporated cities. Two of these libraries have a legal certified librarian.

　　　　　"(2) There is no library fund in the current budget beginning October 1, 1943, and ending September 30, 1944.

　　　　　"(3) Contracts have been entered into by the Commissioners' Court of Gregg county and the three cities. (Copy of contracts inclosed.)

　　　　　"(4) The Court passed an order on the 14th day of August, 1944, authorizing the County Judge to enter said contracts and authorizing the issuance of a warrant in the sum of $3,333.33 to each of said three libraries . . . payable out of the General Fund surplus act. (Copy of orders inclosed.) Said sums are intended as the annual amount for each of said libraries.

　　　　　"Questions:
　　　　　(1) Does Article 1694, Vernon's, authorize the Court to contract with each such library, independent of Article 1689 and 1683, Vernon's, and other articles relating to county library?

　　　　　"(2) If the court may contract with each library must each have certified librarian to approve bill and claims paid out of the sum provided for each library as provided by the warrant above specified - if no county librarian is named or provided with authority to approve bills and claims, etc.?

"(3) What is the meaning of 'such contract shall provide that such established library shall assume the functions of a county free library within the county' and 'said court may contract to pay annually into the library fund of said established library such sums as may be agreed upon . . .' as used in Article 1694 ?

"(4) Must a certified county librarian approve for payment bills and claims in all contracts that the court may make with established libraries ?

"(5) Under the terms and conditions of the contracts above mentioned (copy inclosed and orders of the court also inclosed) will the payment of said warrants issued each such library violate article 3, section 52, of the Constitution of this State ?"

Article 1677, Vernon's Annotated Civil Statutes, provides as follows:

"The commissioners court of any county may establish, maintain and operate within their respective counties, county free libraries in the manner and with the functions prescribed in this title. The said court shall also have the power and authority to establish in co-operation with another county or counties a joint free county library for the benefit of the co-operative counties. (Acts 2nd C.S., 1919, p. 219)".

Article 1679, V.A.C.S., provides:

"After a county free library has been established, the commissioners court shall annually set aside from the general tax fund of the county, a sum sufficient for the maintenance of said library, but not to exceed five cents on the hundred dollars valuation of all property in such county outside of all incorporated cities and towns already supporting a free public library, and upon all property within all incorporated cities and towns already supporting a free public library which have elected to become a part of such free library system provided in this title for the purpose of maintaining county free libraries and for purchasing property therefor."

Article 1689, V.A.C.S., provides:

"All funds of the county free library shall be in the custody of the county treasurer, or other county official, who may discharge the duties commonly delegated to the county treasurer. They shall constitute a separate fund to be known as the county free library fund, and shall not be used for any

other purposes except those of a county free library. Each claim against the county free library shall be authorized and approved by the county librarian, or in his absence from the county, by his assistant. It shall then be acted upon in the same manner as are all other claims against the county."

Article 1690, V.A.C.S., provides:

"After the establishment of a county free library the governing body of any incorporated city or town in the county, maintaining a free public library, may notify the commissioners court that such city or town desires to become a part of the county free library system, and thereafter such city or town shall be a part thereof, and its inhabitants shall be entitled to the benefits of such county free library, and the property within such town or city shall be included in computing the amount to be set aside as a fund for county free library purposes."

Article 1691, V.A.C.S., provides:

"The commissioners court wherein a county free library has been established under the provisions of this title, shall have full power and authority to enter into contracts with any incorporated city or town maintaining a public free library, and such incorporated city or town shall through its governing body, have full power to enter into contracts with such county to secure to the residents of such incorporated city or town the same privileges of the county free library as are enjoyed by the residents of such county outside of such incorporated city or town, or such privileges as may be agreed upon in such contract, upon such consideration to be named in the contract as may be agreed upon, the same to be paid into the county library fund, and thereupon the residents of such incorporated city or town shall have the same privileges with regard to said county free library as are had by the residents of such county outside of such incorporated city or town, or such privileges as may be agreed upon by contract."

Article 1693, V.A.C.S., provides:

"The commissioners court of any county, wherein a county free library has been established under the provisions of this title, shall have full power and authority to enter into contracts or agreements with the commissioners court of any other county to secure to the residents of such other county such privileges of such county free library as may, by such contract, be agreed upon, the same to be paid into the county free library fund, and thereupon the inhabitants of such other county shall have the privilege of such county free library as

may by such contract be agreed upon; and the commissioners court shall have full power and authority to enter into a contract with the commissioners court of another county wherein a county free library has been established, under the provisions of this title and shall have power to provide for and to set aside a county free library fund, in the manner already set out, for the purpose of carrying out such contract. But the making of such contract shall not bar the commissioners court of such county from establishing a county free library therein, and upon the establishment of such county free library such contract may be terminated upon such terms as may be agreed upon by the parties thereto, or may continue for the term thereof."

Article 1694, V.A.C.S., provides:

"Instead of establishing a separate county free library, upon petition of a majority of the voters of the county, the commissioners court may contract for library privileges from some already established library. Such contract shall provide that such established library shall assume the functions of a county free library within the county with which the contract is made, including incorporated cities and towns therein, and shall also provide that the librarian of such established library shall hold or secure a county librarian's certificate from the State Board of Library Examiners. Said court may contract to pay annually into the library fund of said established library such sum as may be agreed upon, to be paid out of the county library fund. Either party to such contract may terminate the same by giving six months notice of intention to do so. Property acquired under such contract shall be subject to division at the termination of the contract upon such terms as are specified in such contract."

The broad purposes and intentions of Articles 1677-1696, supra, are to provide free library services for the citizens of the county. Also, these articles set up the standards for such free library service. The library service provided for in these articles may be obtained in either of two ways: (1) the county may establish, maintain and operate its own free library system as provided in Articles 1677, 1678 and 1679; or (2) the county may contract for such services as provided in Articles 1693 and 1694.

When a county establishes its own library system, its services may be extended to include the residents of incorporated cities or towns, either (1) by joinder with a city or town at the request of its governing body, as provided in Article 1690, or (2) by contract with a city or town as provided in Article 1691. In either event, the county library maintains its identity as a county free library, established, maintained

and operated as such. In case the city or town enters into a contract with the county for library services, the county is in the position of owner, manager and operator of the library system while the city or town is in the position of a subscriber for library services.

On the other hand, instead of establishing, maintaining and operating its own free county library system, the county may contract for library privileges from (1) another county which has established a county free library in accordance with the provisions of Article 1693, or (2) the county may contract for library privileges from "some already established library" (Article 1694). In either event, the other county library or the other "already established library" maintains its identity as the owner, manager and operator of its already established library, and the county, by virtue of its contract, authorized by Article 1693 or 1694, becomes a subscriber for the services of said library.

It should be noted that when a county, in lieu of establishing, maintaining and operating its own library, contracts for library services with either another county or another "already established library," the county receives library services equivalent to those it would have if it had established, maintained and operated its own county library. Article 1693 provides that the contract may be made with another county which has established a free library in accordance with the provisions of this title. Thus, such county contracting for services in lieu of having its own library, receives services that measure up to the standards required for a free county library. Article 1694 provides that the contract "shall provide that such established library shall assume the functions of a county free library within the county with which the contract is made, including incorporated cities and towns therein, and shall also provide that the librarian of such established library shall hold or secure a county librarian certificate from the State Board of Library Examiners," thereby providing a means whereby the county entering into such a contract may have the kind of library service contemplated by this title without such county having to establish, maintain and operate its own library.

It is also noted that in the caption of the original act, pertaining to county libraries, S.B. No. 147, Ch. 117, Gen'l Laws of Texas, 34th Legislature, 1915, the language, in part, is as follows:

"An Act to establish, maintain, operate, equip and disestablish county free libraries and county circulating libraries for the use of the citizens of this State . . . and also authorizing the commissioners court in lieu of establishing free libraries and circulating libraries to enter into contracts with free libraries in any of the cities and towns of this State . . ." (Underscoring ours)

The language is indicative that the purpose of Section 19, S.B. No. 147, Ch. 117, Gen'l Laws of Texas, Regular Session 34th Legislature, 1915, as amended by Section 20, S. B. No. 149, Ch. 57, Gen'l Laws of Texas, Regular Session 35th Legislature, 1917, as amended by Section 20, S. B. No. 80, Ch. 75, Gen'l Laws of Texas, 2nd Called Session, 36th Legislature, 1919, and changed by the codification of 1925 (R.C.S., 1925 Article 1694) to read as cited herein, Article 1694, V. A. C. S., was to provide a means of having library service

without the county's establishing, operating and maintaining a county library as such, but, in lieu thereof, the county is authorized, by virtue of a contract, to subscribe to the services of an "already established library" equivalent to services it could have received had such county established a library of its own, and a county is further authorized to pay for such services in an annual payment from the library fund.

In view of the foregoing, we shall answer your questions categorically.

(1) Article 1694 authorizes the commissioners' court to contract with an "already established library," such as each of those referred to in your inquiry. The contract must provide, among other things, that the librarian of the "already established library" shall have a proper certificate. This provision of Article 1694 is in lieu of the provision of Article 1683 requiring a county librarian to be appointed by the commissioners' court, for that appointment of a librarian by the court is applicable to a situation where the county establishes, operates and maintains its own library, and not where the county contracts or subscribes for library services from an "already established library." Since Article 1694 authorizes a lump sum or annual payment for library services, this provision is in lieu of that part of Article 1689 referring to approval of claims by the county librarian, for that part of Article 1689 (concerning the librarian's approval of claims) has reference to a situation where the county has established its own library and has appointed its own librarian, rather than to a situation where the county subscribes, for a lump sum or annual payment, for library services in lieu of establishing its own library, as provided in Article 1694.

(2) In view of the foregoing discussion, this question is answered in the negative.

(3) The language, "such contract shall provide that such established library shall assume the function of a county free library within the county," has reference to the service which the "already established library" must provide; that is, the same service that a library owned and operated by the county would provide under the provisions of this title. The contract may contain such provisions with reference to the function and services of the library as may be agreed upon by the parties thereto, said provisions to be in accord with the attainment of the objective of library service within the scope and purview of this title.

With reference to the language of Article 1694, "said court may contract to pay annually into the library fund of said established library such sum as may be agreed upon," it is our interpretation that said language provides a single annual consideration from the county in exchange for the library services by the already established library, said services to be in accordance with the contract authorized by Article 1694. In Section 20, S.B. No. 149, Ch. 57, Gen'l Laws of Texas, Regular Session,

35th Legislature, 1917, and in Section 20, S. B. No. 80, Ch. 75, Gen'l Laws of Texas, 2nd Called Session, 36th Legislature, 1919, we find the following language:

"The Commissioners Court may contract to pay annually into the library fund of said established library such sum as may be agreed upon. Said sum shall be paid out of the county library fund provided for in Section 12 of this Act."

Section 12 of such act uses the identical language of Article 1679, V.A. C.S.

Since the provisions of Article 1694 are in lieu of, or take the place of, the "establishment" of a county free library, the fund from which the annual payment is to be made is the library fund set up under the limitations as to the total amount under Article 1679, and in accordance with Article 1689, as to the designated and specific use of said fund. Under the foregoing limitations, the commissioners' court is authorized to "contract to pay annually into the library fund of said established library such sum as may be agreed upon to be paid out of the county library fund."

(4) The claim for the payment of the annual sum for library services under the terms of the contract would be allowed and ordered paid by the commissioners' court in the same manner that any other claim for services rendered the county under a contract would be allowed and paid. The approval by a certified librarian would not be required, for under the provisions of Article 1694 the plan of an annual or lump sum payment is in lieu of those provisions with reference to the approval of claims by a certified librarian, which provisions are applicable to a situation where the county establishes, maintains and operates its own library, and has its own librarian, and not where the county contracts or subscribes to the library service from an "already established library."

(5) Article 3, Section 52, Constitution of Texas provides, in part, as follows:

"The Legislature shall have no power to authorize any county, city, town or other political corporation or subdivision of the State to lend its credit or to grant public money or thing of value in aid of, or to any individual, association or corporation, whatsoever, or to become a stockholder in such corporation, association or company; . . ."

The Austin Court of Civil Appeals in the case of Bland, et al, vs. City of Taylor, et al, 37 S.W.(2), 291, in considering the applicability of the above set out provision of the Constitution, together with Article 11, Section 3, of the Constitution, which prohibits any county, city or municipality from making any appropriation or donation or in any wise

loaning its credit to any private corporation or association, said the following:

"These provisions clearly contemplate and prohibit, we think, benefits at public expense attempted in behalf of individuals, corporations, or associations, as such, acting independently and conducting some enterprise of their own, such as are usually conducted for profit and commercial in their nature."

In the case of Davis, et al, vs. City of Taylor, et al, 67 S. W. (2) 1033, in which the judgment rendered in Bland, et al, vs. City of Taylor, et al, supra, was affirmed, the Supreme Court of Texas said the following:

"Article 8, Section 3, of the Constitution provides: 'Taxes shall be levied and collected by general laws and for public purposes only.'--Suffice it to say that, unless a court can say that the purposes for which public funds are expended are clearly not public purposes, it would not be justified in holding invalid a legislative act - - providing funds for such purposes."

Therefore, we do not believe that such a contract, or contracts, as we have discussed herein, would violate any provision of the Constitution of Texas, as the expenditures herein mentioned are for county library services for the citizens of the county. Furthermore such service is clearly public in nature, and, the expenditure is not for a commercial purpose. In connection with this question, we point out that we are not here ruling on the form or substance of your contracts or the order of the commissioners' court, as we believe you will have no difficulty in conforming them, if necessary, to our holding herein.

You are further advised that before such funds should be paid out, such expenditures must have been authorized in the county budget.

Trusting that the foregoing satisfactorily answers your inquiry, we are

Yours very truly

Approved NOV 21, 1944
/s/ Carlos C. Ashley
First Assistant
Attorney General

ATTORNEY GENERAL OF TEXAS

By /s/ J. A. Ellis
      J. A. Ellis
      Assistant

This Opinion considered and approved in limited conference

JAE:zd/cm